TUCKER ELLIS LLP
Mollie F. Benedict-SBN 187084
mollie.benedict@tuckerellis.com
Joshua J. Wes-SBN 238541
joshua.wes@tuckerellis.com
Nicholas V. Janizeh-SBN 307816
nicholas.janizeh@tuckerellis.com
515 South Flower Street
Forty-Second Floor
Los Angeles, CA 90071
Telephone:    213.430.3400
Facsimile:    213.430.3409

Attorneys for Defendants
ETHICON, INC., and JOHNSON & JOHNSON

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIE RENTERIA,<br><br>          Plaintiff,<br><br>     v.<br><br>ETHICON, INC., et al.,<br><br>          Defendants. | ) Case No. 2:20-cv-05673-MWF-KES<br>)<br>) **MEMORANDUM IN SUPPORT OF**<br>) **DEFENDANTS' MOTION FOR**<br>) **SUMMARY JUDGMENT**<br>)<br>) *[Filed concurrently with Notice of Motion*<br>) *for Summary Judgment; Statement of*<br>) *Undisputed Material Facts; Declaration*<br>) *of Mollie Benedict; and [Proposed]*<br>) *Judgment]*<br>)<br>) Date:        October 19, 2020<br>) Time:        10:00 a.m.<br>) Ctrm:        5A |

TUCKER ELLIS LLP

Chicago ◆ Cleveland ◆ Columbus ◆ Houston ◆ Los Angeles ◆ San Francisco ◆ St. Louis

## <u>**TABLE OF CONTENTS**</u>

I. BACKGROUND ........................................................................7

II. LEGAL STANDARDS...........................................................10

III. ARGUMENT ........................................................................11

    A.   Plaintiff's claims are barred by California's two-year statute of limitations. .........................................................................11

    B.   Plaintiff's warnings and fraud-based claims fail for lack of specific causation........................................................................15

    C.   Plaintiff's negligent Design Defect claim (Count I) fails because Plaintiff's expert fails to connect Plaintiff's injuries to any defect in TVT-Exact, and Dr. Webster's testimony also does not provide a defect in the design of TVT-Exact which caused Plaintiff's alleged injuries.................................................20

    D.   Plaintiff has no evidence to support a strict liability Manufacturing Defect claim (Counts I and II). ...........................23

    E.   Plaintiff also cannot establish her other negligence-based claims (Counts X and XIV). ......................................................23

    F.   Plaintiff cannot establish an unjust enrichment claim (Count XV). .........................................................................................24

    G.   There is no such claim of "strict liability – defective product" (Count IV) under California law. ..................................................24

IV. CONCLUSION.......................................................................25

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Houston ♦ Los Angeles ♦ San Francisco ♦ St. Louis

MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

# TABLE OF AUTHORITIES

**Cases**

*Abt v. Ethicon, Inc.*,
   No. 1:20-cv-00047-SRC, 2020 WL 4887022 (Aug. 20, 2020 E.D. Mo.)................19, 22

*Aguilar v. Atlantic Richfield Co.*,
   25 Cal. 4th 826 (2001)................................................................................................24

*Aguirre v. Home Depot U.S.A., Inc.*,
   No. 1:10-cv-00311-LJO-GSA, 2012 WL 3639078 (E.D. Cal. Aug. 23, 2012)............23

*Anderson v. Liberty Lobby*,
   477 U.S. 242 (1986) ..................................................................................................10

*Artiglio v. Superior Court*,
   22 Cal. App. 4th 1388 (1994)....................................................................................22

*Astiana v. Hain Celestial Group, Inc.*,
   783 F.3d 753 (9th Cir. 2015) .....................................................................................24

*Azadpour v. Sun Microsystems, Inc.*,
   No. C06-03272 MJJ, 2007 WL 2141079 (N.D. Cal. July 23, 2007) ..........................15

*Balura v. Ethicon, Inc.*,
   2020 WL 819293 (N.D.N.Y. Feb. 19, 2020) .............................................................21

*Barker v. Lull Eng'g Corp.*,
   20 Cal. 3d 413 (Cal. 1978) .......................................................................................23

*Begley v. Bristol-Myers Squibb Co.*,
   No. 06-6051, 2013 WL 144177 (D.N.J. Jan. 11, 2013) ............................................16

*Belanger v. Ethicon, Inc.*,
   No. 2:13-cv-12036, 2014 WL 346717 (S.D.W. Va. Jan. 30, 2014) ...........................11

*Brown v. Superior Court*,
   751 P.2d 470 (Cal. 1988)......................................................................................22, 24

*Calvillo–Silva v. Home Grocery*,
   19 Cal. 4th 714 (1998)...............................................................................................24

*Carlin v. Superior Court*,
   13 Cal. 4th 1104 (1996).............................................................................................15

*Contreras v. Boston Sci. Corp.*,
   No. 2:12-cv-03745, 2016 WL 14366682 (S.D. W. Va. Apr. 11, 2016).......................19

*Cox v. Depuy Motech, Inc.*,
   No. 95-CV-3848-L(JA), 2000 WL 1160486 (S.D. Cal. Mar. 29, 2000) .....................20

*Cutter v. Ethicon, Inc.*,
   No. 5:19-443-DCR, 2020 WL 109809 (E.D. Ky. Jan. 9, 2020) ................................19

*Czajkowski v. Haskell & White, LLP*,
   208 Cal. App. 4th 166 (Ct. App. 2012) .....................................................................11

*Dilley v. C.R. Bard, Inc.*,
   No. 2:14-CV-01795-ODW, 2014 WL 1338877 (C.D. Cal. Apr. 3, 2014) ..................15

*Disney Enter., Inc. v. VidAngel, Inc.*,
   371 F. Supp. 3d 708 (C.D. Cal. 2019)......................................................................10

*Elliott v. Janssen Pharms., Inc.*,
   No. CV-13-00743-DMB, 2013 WL 6622614 (C.D. Cal. Dec. 13, 2013).....................13

*Erickson v. Boston Sci. Corp.*,
   846 F. Supp. 2d 1085 (C.D. Cal. 2011)....................................................................12

*First Nat'l Bank & Trust Corp. v. Am. Eurocopter Corp.*,
   378 F.3d 682 (7th Cir. 2004).....................................................................................16

*Fortyune v. Am. Multi-Cinema, Inc.*,
   364 F.3d 1075 (9th Cir. 2004)...................................................................................10

*Fox v. Ethicon Endo-Surgery, Inc.*,
   110 P.3d 914 (Cal. 2005)...........................................................................................11

*Friedman v. Merck & Co.*,

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Houston ♦ Los Angeles ♦ San Francisco ♦ St. Louis

MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

131 Cal. Rptr. 2d 885 (Cal. App. 2003) ...................................................23
*Garrett v. Howmedica Osteonics Corp.*,
214 Cal. App. 4th 173 (2013) .......................................................... 22, 25
*Gen. Am. Life Ins. Co. v. Rana*,
769 F. Supp. 1121 (N.D. Cal. 1991) ....................................................15
*Gilliland v. Novartis Pharm. Corp.*,
34 F. Supp. 3d 960 (S.D. Iowa 2014) ..................................................16
*Gray v. Badger Min. Corp.*,
676 N.W.2d 268 (Minn. 2004) ............................................................17
*Grebing v. 24 Hour Fitness USA, Inc.*,
234 Cal. App. 4th 631 (2015) .............................................................24
*Hendrix v. Novartis Pharm. Corp.*
647 F. App'x 749 (9th Cir. 2016) ........................................................12
*Hendrix v. Novartis Pharm. Corp.*,
975 F. Supp. 2d 1100 (C.D. Cal. 2013) ..............................................12
*Hull v. Ethicon, Inc.*,
No. 3:20-cv-00038 JMS-DML, 2020 WL 1154577 (S.D. Ind. Mar. 10, 2020)..........19
*Huntman v. Danek Med. Inc.*,
No. 97-cv-2155, 1998 WL 663362 (S.D. Cal. July 24, 1998) ................15
*In re Coordinated Latex Glove Litig.*,
99 Cal. App. 4th 594 (Cal. Ct. App. 2002) ..................................... 23, 25
*Johnson v. Am. Standard, Inc.*,
179 P.3d 905 (Cal. 2008)......................................................................16
*Jolly v. Eli Lilly & Co.*,
751 P.2d 923 (Cal. 1988) ......................................................................12
*Kennedy v. Ethicon, Inc.*,
No. 5:20-CV-00185, 2020 WL 4050459 (E.D. Pa. July 20, 2020)........14
*Lampron v. Johnson & Johnson & Ethicon, Inc.*, No.
20-CV-317-JD, 2020 WL 3452150 (D.N.H. June 24, 2020) .......................21
*Lancaster v. Ethicon, Inc.*,
2020 WL 819291 (N.D.N.Y. Feb. 19, 2020) ......................................21
*Latiolais v. Merck & Co., Inc.*,
302 F. App'x 756 (9th Cir. 2008) ........................................................16
*Lawson v. Management Activities, Inc.*,
81 Cal. Rptr. 2d 745 (Cal. App. 1999) ................................................23
*Long v. Cty. of Los Angeles*,
442 F.3d 1178 (9th Cir. 2006) .............................................................10
*Lord v. Sigueiros*,
No. CV040243, 2006 WL 1510408 (Cal. Super. Ct. Apr. 25, 2006) ........15
*Marin Healthcare Dist. v. Sutter Health*,
127 Cal. Rptr. 2d 113 (Ct. App. 2002) ...............................................11
*Marmont v. Bernzomatic Corp.*,
No. LACV1600848JAKRAOX, 2018 WL 6252500 (C.D. Cal. July 31, 2018)............20
*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*,
475 U.S. 574 (1986) .............................................................................10
*Motus v. Pfizer Inc. (Roerig Div.)*,
358 F.3d 659 (9th Cir. 2004) ......................................................... 15, 16
*Motus v. Pfizer, Inc.*,
196 F. Supp. 2d 984 (C.D. Cal. 2001) ........................................... 15, 16
*Norby v. Ethicon, Inc.*,
No. 1:20-cv-00323-LMM (N.D. Ga. Apr. 17, 2020) ...........................14
*Plenger v. Alza Corp.*,
11 Cal. App. 4th 349 (1992) ........................................................... 15, 16
*Pooshs v. Philip Morris USA, Inc.*,
904 F. Supp. 2d 1009 (N.D. Cal. 2012) ..............................................20

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Houston ♦ Los Angeles ♦ San Francisco ♦ St. Louis

4

MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

*Richards v. Nielson Freight Lines*
  810 F.2d 898 (9th Cir. 1987) ................................................................................10
*Richards v. Nielson Freight Lines,*
  602 Supp. 1224 (E.D. Cal. 1985) .........................................................................10
*Rivas v. Safety-Kleen Corp.*,
  119 Cal. Rptr. 2d 503 (Cal. App. 2002) ...............................................................15
*Rivas v. Safety-Kleen Corp.*,
  119 Cal. Rptr. 2d 503 (Ct. App. 2002) .................................................................12
*Rutherford Holdings, LLC v. Plaza Del Rey*,
  223 Cal. App. 4th 221 (2014) ...............................................................................24
*Sanchez v. Boston Scientific Corp.*,
  38 F. Supp. 3d 727 (S.D.W. Va. 2014) .................................................................23
*Sharp v. Ethicon, Inc.*,
  No. 2:20-CV-2028, 2020 WL 1434566 (W.D. Ark. Mar. 24, 2020) .............17, 19
*Stark v. Johnson & Johnson,*
  No. 18-cv-06609 (N.D. Ill. Apr. 20, 2020) ..........................................................14
*Stephen v. Ford Motor Co.*,
  134 Cal. App. 4th 1363 (2005)..............................................................................20
*Thrifty Oil Co. v. Bank of Am. Nat. Trust and Sav. Ass'n*,
  322 F.3d 1039 (9th Cir. 2003)...............................................................................10
*Tucker v. Wright Med. Tech., Inc.*,
  No. 11-CV-03086-YGR, 2013 WL 1149717 (N.D. Cal. Mar. 19, 2013) .............16
*Turner v. Ethicon, Inc.*,
  No. 1:20-cv-876-ACA, 2020 WL 4346784 (N.D. Ala. July 29, 2020) ................14
*Valentine v. Baxter Healthcare Corp.*,
  81 Cal. Rptr. 2d 252 (Cal. App. 1999) .................................................................23
*Vigneau v. Ethicon, Inc.*,
  No. 3:20-cv-00506-JAG (E.D. Va. Aug. 12, 2020) .............................................14
*Viramontes v. Pfizer, Inc.*,
  No. 2:15-cv-1754-TLNACPS, 2015 WL 9319497 (E.D. Cal. Dec. 23, 2015).....12
*Yamauchi v. Cotterman*,
  84 F. Supp. 3d 993 (N.D. Cal. 2015).....................................................................11

**Statutes**

Cal. Civ. Code § 1573 ................................................................................................14
Cal. Civ. Proc. Code § 335.1 .....................................................................................11

**Rules**

Fed. R. Civ. P. 56(a) ..................................................................................................10

**Other Authorities**

22 Am. Jur. 2d Damages § 567...................................................................................7
Judicial Council of Cal. Civ. Jury Instr. ("CACI") § 1204........................................20

TUCKER ELLIS LLP

Chicago ◆ Cleveland ◆ Columbus ◆ Houston ◆ Los Angeles ◆ San Francisco ◆ St. Louis

MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

## MEMORANDUM IN SUPPORT OF DEFENDANTS'
## MOTION FOR SUMMARY JUDGMENT

Pursuant to the Court's Order granting the Parties' Joint Stipulation for an Order continuing the hearing on Defendants' Motion for Summary Judgment and Motion to Strike Expert Designation, Doc. 67, Defendants Ethicon, Inc., and Johnson & Johnson (collectively "Ethicon") submit this renewed version of their Motion for Summary Judgment, Doc. 19 & 20, supplemented with additional testimony and arguments based on the depositions of Plaintiff's implanting physician, Heidi Chen Chew, M.D., and Plaintiff's case-specific expert, W. Scott Webster, M.D.  Both depositions were taken subsequent to the filing of Defendants' Motion on December 19, 2019.   Dr. Webster's deposition took place on January 23, 2020, and Dr. Chew's deposition took place on January 31, 2020.

Previously, Defendants demonstrated summary judgment was warranted on Plaintiff's warnings or fraud-based claims because Plaintiff had not deposed the implanting physician, Dr. Chew and could not establish specific causation for the claims.  Although Dr. Chew has now been deposed, Plaintiff is still unable to establish specific causation because Dr. Chew testified she did not rely on manufacturer warnings.  Instead, she learned about the risks of TVT-Exact from other sources.  Dr. Chew also testified that in 2014, when she performed Plaintiff's implant surgery, she was aware of the risks of implanting TVT-Exact.  Dr. Chew stood by her decision to implant TVT-Exact and testified that nothing she had heard subsequently or at her deposition about its risks would alter her treatment decision.  For these reasons, Defendants are entitled to summary judgment on all of Plaintiff's failure to warn and fraud-based claims.

Defendants also argued previously that Plaintiff does not have case-specific expert testimony needed to establish that a defect in TVT-Exact's design caused Plaintiff's alleged injuries.  Dr. Webster's deposition testimony does not change, but rather supports, this argument.  In his deposition testimony, as in his expert report, Dr. Webster does not link any of Plaintiff's alleged injuries to any alleged defect in the design of TVT-Exact.

Defendants also include herein all arguments previously addressed in their prior Motion as to all of Plaintiff's remaining claims. Defendants are entitled to summary judgment because all remaining claims are barred by California's two-year statute of limitations. Additionally, Plaintiff's manufacturing defect claims fails for lack of proof, and Plaintiff has brought other claims that are either not cognizable under California law or which she cannot establish on the evidence of this case, all of which will be discussed herein. Summary judgment should be granted in full.[1]

## I.   BACKGROUND

Plaintiff Marie Renteria is a resident of California. Statement of Undisputed Material Facts ("SUMF") No. 1 (citing Ex. A,[2] Plaintiff Fact Sheet ("PFS"), at p. 5). On June 4, 2014, Dr. Heidi Chen Chew implanted Plaintiff with TVT-Exact to treat her stress urinary incontinence at Kaiser Permanente Fontana Medical Center in Fontana, California. SUMF No. 2 (citing Ex. A, PFS, at p. 5; Ex. B, Medical Records, at RENTERIAM_PSR_00013-00014. *See also* Doc. 1, Short Form Complaint ("SFC"), ¶ 11).

Dr. Chew testified she did not rely on Ethicon, either its instructions for use ("IFU") or otherwise, to inform her of the risks of implanting TVT-Exact. SUMF No. 10 (citing Ex. D, Dep. Tr. of Heidi Chen Chew, M.D. ("Chew Dep."), at 17:19-18:2; 29:18-25; 105:16-106:5; 167:1-5). Instead, she relies on many other sources to inform her about the risks of implanting TVT-Exact, including: her residency and fellowship, continuing medical education, and medical literature examining the safety and efficacy of mesh slings. SUMF No. 11 (citing Ex. D, Chew Dep., at 28:7-22; 151:13-24; 167:6-9).

[1] Plaintiff has also alleged "Punitive Damages" (Count XVII) and "Discovery Rule and Tolling" (Count XVIII). The "discovery rule and tolling claim" is not an independent claim, but is a doctrine affecting the limitations period. The burden of pleading and establishing delayed discovery is on Plaintiff as the party relying on the discovery rule to toll the limitations period. Similarly, punitive damages is not a separate cause of action; it is remedy. 22 Am. Jur. 2d Damages § 567. Should this Court grant summary judgment on all of Plaintiff's cognizable claims, however, the action should be dismissed with prejudice in its entirety.

[2] All exhibits referenced herein are attached to the Declaration of Mollie Benedict, filed concurrently herewith.

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Houston ♦ Los Angeles ♦ San Francisco ♦ St. Louis

MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Houston ♦ Los Angeles ♦ San Francisco ♦ St. Louis

When she implanted Plaintiff's TVT-Exact, Dr. Chew was aware of the risks alleged to have caused Plaintiff's injuries; specifically, she testified to knowing of risks of infection, damage to organs, including the bladder and urethra, damages to nerves, chronic or permanent pelvic and vaginal pain, chronic or permanent dyspareunia (which can be severe), erosion into organs such as the bladder and the urethra, erosion through the vagina epithelium and exposure inside the vagina, vaginal scarring, inflammation and foreign body reaction around the mesh which could persist indefinitely or as long as the mesh remained in the body, new or worsened urinary problems that include new or worsening urgency or urgent incontinence including retention or other voiding problems, and the necessity of additional corrective surgeries.  SUMF No. 12 (citing Ex. D, Chew Dep., at 39:20-41:24).

Dr. Chew further testified that she heard nothing at her deposition about the risks of TVT-Exact that would change her treatment decision to implant the device in Plaintiff in 2014.  SUMF No. 15 (citing Ex. D, Chew Dep., at 173:7-17).  Dr. Chew stands by her decision to implant TVT-Exact to treat Plaintiff's stress urinary incontinence.  SUMF No. 16 (citing Ex. D, Chew Dep., at 90:8-25).

On August 26, 2014, Plaintiff went to the emergency room with sharp suprapubic pain, which she reported she had for two weeks:  "Reported self exam and noticed something coming through vaginal wall."  Plaintiff was advised to consult Dr. Chew. SUMF No. 3 (citing Ex. B, Medical Records, at RENTERIAM_PSR_00172-00180).  Dr. Chew examined Plaintiff that same day.  SUMF No. 4 (citing Ex. B, Medical Records, at RENTARIAM_PSR_00216-00220).  Plaintiff reported her symptoms to Dr. Chew:  "felt [pain] to be bladder but stated she could feel something coming through vaginal wall. Pain is like steak knife at times.  Pain causes difficulty walking."  *Id.*

On August 27, 2014, Dr. Chew performed an operation to treat Plaintiff's mesh erosion into her vaginal wall:  "Inspection revealed 1 mm area of sling mesh exposure along edges in left upper mid-urethral region."  SUMF No. 5 (citing Ex. B, Medical Records, at RENTARIAM_PSR_00016-00017; 00213-00214).  Dr. Chew dissected the

MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

mesh and loosened the sling in order to treat Plaintiff's mesh exposure.  *Id.*

Plaintiff testified that she does not recall whether Dr. Chew told her the purpose of the August 2014 surgery.  SUMF No. 6 (citing Ex. C, Dep. Tr. of Marie Renteria ("Pl. Dep.), at 128:19-129:9).  But, Plaintiff acknowledged she began experiencing the majority of her claimed injuries in 2014, many within days or weeks of her initial implantation surgery in June 2014, and others soon after her surgery to remove a portion of the TVT-Exact in August 2014.  SUMF No. 7 (citing Ex. A, PFS, at p. 7).  Plaintiff delayed the filing of this suit until December 31, 2018.  SUMF No. 8 (citing Doc. 1, SFC).

Plaintiff's case-specific expert, Dr. Webster, only vaguely opines that "the cause of her recurrent stress urinary incontinence and mesh exposure are related to the Ethicon Gynecare TVT Exact implant."  SUMF No. 22 (citing Ex. G, Webster Report, at 4).  Dr. Webster concedes, though, all the risks of injuries he opines were related to Plaintiff's TVT-Exact were included in Dr. Chew's risk discussion, which he described as comprising "a comprehensive template," noting that he had "never seen a more extensive list of risks and complications in a medical record."  SUMF No. 13 (citing Ex. E, Dep. Tr. of W. Scott Webster, M.D. ("Webster Dep."), at 34:19-23; 35:20-24).

In his 3.5-page Report, Dr. Webster does not identify any specific defect in TVT-Exact's design, nor does he opine that any specific defect caused Plaintiff's injuries.  SUMF No. 21 (citing Ex. G, Webster Report).  Plaintiff obtained no additional testimony at Dr. Webster's deposition which would establish that a specific defect in Defendants' TVT-Exact mesh caused any of the injuries Plaintiff alleges here.  SUMF No. 19 (citing Ex. E, Webster Dep.).

To the contrary, Dr. Webster testified that he was *not* opining that TVT-Exact is defective.  SUMF No. 20 (citing Ex. E, Webster Dep., at 80:11-14).  Dr. Webster opines only that, "the cause of her recurrent stress urinary incontinence and mesh exposure are related to the Ethicon Gynecare TVT Exact implant."  SUMF No. 22 (citing Ex. G, Webster Report, at 4).  At his deposition, Dr. Webster clarified that there was a

9

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Houston ♦ Los Angeles ♦ San Francisco ♦ St. Louis

typographical error in his report, and he intended to state the opinion that the recurrent incontinence was urgency, not stress incontinence.  Thus, the alleged injuries that Dr. Webster connected to the TVT-Exact are exposure (and pain related to this exposure) and urge incontinence.  *Id.* (citing Ex. E, Webster Dep., at 73:1-12; 80:11-24; 81:9-14).

## II.   <u>LEGAL STANDARDS</u>

Summary judgment is proper where, when drawing permissible inferences in favor of the nonmoving party, there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986); *Fortyune v. Am. Multi-Cinema, Inc.*, 364 F.3d 1075, 1080 (9th Cir. 2004).   A "material" fact is one which affects the case's outcome.  *Thrifty Oil Co. v. Bank of Am. Nat. Trust and Sav. Ass'n*, 322 F.3d 1039, 1046 (9th Cir. 2003) (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986)).  And, a dispute is "genuine" if there is sufficient evidence for a reasonable jury to decide the case for the non-moving party.  *Long v. Cty. of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006) (citing Anderson, 477 U.S. at 248).

Even though "all justifiable inferences" from the non-movant's evidence "are to be drawn in his favor," *Anderson*, 477 U.S. at 255, "[n]evertheless, inferences are not drawn out of the air, and it is the nonmoving party's obligation to produce a factual predicate from which the inference may be drawn," *Disney Enter., Inc. v. VidAngel, Inc.*, 371 F. Supp. 3d 708, 714 (C.D. Cal. 2019) (citing *Richards v. Nielson Freight Lines*, 602 Supp. 1224, 1244-45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898 (9th Cir. 1987)).  The Court's function at this stage is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 252.  A genuine issue is one about which there is more than "some metaphysical doubt as to the material facts," but instead "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *Matsushita*, 475 U.S. at 587 (citation omitted).

TUCKER ELLIS LLP
Chicago ♦ Cleveland ♦ Columbus ♦ Houston ♦ Los Angeles ♦ San Francisco ♦ St. Louis

The Parties agree that California substantive law applies to Plaintiff's claims.[3]

## III.  ARGUMENT

### A.  Plaintiff's claims are barred by California's two-year statute of limitations.

Under California law, Plaintiffs' claims are subject to a two-year statute of limitations for an action for "injury to . . . an individual caused by the wrongful act or neglect of another."  *See* Cal. Civ. Proc. Code § 335.1; *Fox v. Ethicon Endo-Surgery, Inc.*, 110 P.3d 914, 921 n.3 (Cal. 2005); *see also Marin Healthcare Dist. v. Sutter Health*, 127 Cal. Rptr. 2d 113, 121 (Ct. App. 2002).

The personal injury statute of limitations typically begins to run when the elements of the claim are complete—that is, when the plaintiff's injury occurs.  *See, e.g., Fox*, 110 P.3d at 920-21.  "A plaintiff whose complaint shows on its face that his claim would be barred without the benefit of the discovery rule must specifically plead facts to show (1) the time and manner of discovery *and* (2) the inability to have made earlier discovery despite reasonable diligence."  *Id.* (citation omitted).  Mere conclusory statements are insufficient.  *Id.*[4]

Under California's discovery rule, suspicion of injury starts the clock: "the statute of limitations begins to run when the plaintiff suspects *or* should suspect that her injury was caused by wrongdoing, that someone has done something wrong to her. . . . [T]he limitations period begins once the plaintiff has notice or information of circumstances to

---

[3] In their initial Motion for Summary Judgment, Doc. 19 & 20, filed before this case was remanded from the MDL, Defendants argued that, because Plaintiff was implanted with Prolift in California, California's choice-of-law rules apply to Plaintiff's claims.  *See Belanger v. Ethicon, Inc.*, No. 2:13-cv-12036, 2014 WL 346717, at *7 (S.D.W. Va. Jan. 30, 2014) (holding that the state of implant's choice-of-law rules apply).  Applying California's three-step governmental interest analysis, California is the only state with a legitimate interest here because it is the state of Plaintiff's residence, implant procedure, and medical care.  *See* Doc. 20, p. 4.  Plaintiff stated no opposition to this choice of law in her Response and Memorandum in Opposition to Defendants' Motion for Summary Judgment.  Doc. 24.

[4] The burden of pleading and establishing "belated discovery" is on Plaintiffs as the party relying on the discovery rule to toll the limitations period.  *Czajkowski v. Haskell & White, LLP*, 208 Cal. App. 4th 166, 174-75 (Ct. App. 2012) (citations omitted); *accord Yamauchi v. Cotterman*, 84 F. Supp. 3d 993, 1011 (N.D. Cal. 2015).

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Houston ♦ Los Angeles ♦ San Francisco ♦ St. Louis

put a reasonable person *on inquiry*." *Rivas v. Safety-Kleen Corp.*, 119 Cal. Rptr. 2d 503, 509 (Ct. App. 2002) (internal quotation marks and citations omitted) (emphasis added). "Once the plaintiff has a suspicion of wrongdoing, and therefore an incentive to sue, she must decide whether to file suit or sit on her rights. So long as a suspicion exists, *it is clear that the plaintiff must go find the facts*; she cannot wait for the facts to find her." *Jolly v. Eli Lilly & Co.*, 751 P.2d 923, 928 (Cal. 1988). And, "[p]laintiff cannot prevent the statute of limitations from starting simply by refusing to investigate his suspicions." *Erickson v. Boston Sci. Corp.*, 846 F. Supp. 2d 1085, 1095 (C.D. Cal. 2011).

Certainty is not required to start the clock: "California law does not require a plaintiff to be certain of the cause of his injury before his cause of action accrues; it merely requires facts sufficient to put a reasonable plaintiff in suspicion that he has been wronged. It requires the plaintiff, once put in suspicion, to conduct a reasonable investigation, which surely includes ordinary discussions with one's treating physicians as to possible causes of one's injuries." *Hendrix v. Novartis Pharm. Corp.*, 975 F. Supp. 2d 1100, 1108-09 (C.D. Cal. 2013), *aff'd*, 647 F. App'x 749 (9th Cir. 2016) (internal citations omitted).

In *Hendrix*, the plaintiff alleged that the drug Zometa caused his bisphosphonate osteonecrosis, or osteonecrosis of the jaw ("ONJ") and that defendant failed to warn him of the possible connection between the drug and ONJ. *Id.* at 1103, 1107. Because he filed his suit more than two years after the injury, he sought benefit of the discovery rule and argued that his knowledge of the causal link between the drug and ONJ developed as a result of a television commercial. *Id.* at 1107-08. The district court focused on plaintiff's knowledge that he had an adverse reaction to the drug and his discussions with his doctor about his belief that the drug caused his ONJ. *Id.* at 1107. The plaintiff had a suspicion of the causal connection, and he waited beyond the statute of limitations to act on this suspicion to file suit. *See also Viramontes v. Pfizer, Inc.*, No. 2:15-cv-1754-TLNACPS, 2015 WL 9319497, at *7-9 (E.D. Cal. Dec. 23, 2015), *report and recommendation adopted* 2016 WL 704715 (E.D. Cal. Feb. 23, 2016) (concluding that

plaintiff was on inquiry notice once doctor identified possible link between the drug and her injury, such that the limitations period began to run and plaintiff had two years to develop facts to either confirm or refute the reasonable suspicion of a link between the drug and the injury); *Elliott v. Janssen Pharms., Inc.*, No. CV-13-00743-DMB, 2013 WL 6622614, at *4 (C.D. Cal. Dec. 13, 2013) (finding sufficient notice to the plaintiff from doctor's warning that his symptoms could be linked to the drug he was taking and doctor's recommendation he stop taking the drug to resolve the symptoms).

Here, Plaintiff was experiencing pelvic pain and discovered mesh erosion during a self-exam in August 2014. SUMF No. 3 (citing Ex. B, Medical Records, at RENTERIAM_PSR_00172-00180). She was admitted, her vaginal mesh erosion was confirmed, a portion of the mesh was removed, and Dr. Chen also loosened and dissected free the mesh. SUMF Nos. 4-5 (citing Ex. B, Medical Records, at RENTARIAM_PSR_00016-00017; 00213-00214). Plaintiff claims not to recall whether she was aware of the purpose of the August 2014 surgery at the time. SUMF No. 6 (citing Ex. C, Pl. Dep. at 128:19-129:9). But Plaintiff knew of her mesh erosion and acknowledges she began experiencing the majority of her claimed injuries in 2014, many within days or weeks of her initial implantation surgery in June 2014, and others soon after her August 2014 surgery to remove a portion of the mesh. SUMF No. 7 (citing Ex. A, PFS, at p. 7).

Plaintiff bears the burden of proving belated discovery of her cause of action and an inability to make an earlier discovery despite reasonable diligence. Plaintiff relies on a lack of memory of whether her physician explained the purpose of her August 2014 surgery, during which mesh erosion was confirmed and a portion of the mesh was removed. This is insufficient to meet her burden of proving application of the discovery rule. Accordingly, the statute of limitations began running no later than August 2014. Yet Plaintiff did not file this action until December 31, 2018, more than **four years** later.

District courts considering statute of limitations arguments in cases remanded from the same MDL as Plaintiffs' case have also entered summary judgment on this basis. For

13

MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Houston ♦ Los Angeles ♦ San Francisco ♦ St. Louis

example, in *Stark v. Johnson & Johnson*, the district court ruled that Plaintiffs' action was time-barred under, Illinois law, which also recognizes a discovery rule; there, the Court found in Ethicon's favor, finding the following facts sufficient to trigger the accrual of the plaintiff's claims: plaintiff's awareness of eroded mesh; plaintiff's discussion with her doctor about erosion of her mesh into her urethra; the worsening of incontinence and pain after her implant surgery; and, plaintiff's knowledge of further complications of eroded mesh. *Stark,* No. 18-cv-06609, Doc. No. 73, at *9 (N.D. Ill. Apr. 20, 2020). The court concluded that, "These undisputed facts indicate that Stark knew the continued pain and incontinence were directly related to the eroded mesh. . . . After her two surgeries to remove the eroded mesh, Stark was 'obligated to begin her inquiry as to who manufactured her sling and whether her complications were due to a problem with the surgery or a defective sling.'" *Id.* at *10 (citation omitted). *See also* additional cases remanded from the same MDL in which summary judgment was granted because plaintiffs' claims were time-barred: *Vigneau v. Ethicon, Inc.*, No. 3:20-cv-00506-JAG, Doc. No. 107 (text entry only) (E.D. Va. Aug. 12, 2020) (granting summary judgment based on Virginia's statute of limitations); *Turner v. Ethicon, Inc.*, No. 1:20-cv-876-ACA, 2020 WL 4346784 (N.D. Ala. July 29, 2020) (granting summary judgment in full, finding claims were barred by Tennessee's two-years statute of limitations); *Kennedy v. Ethicon, Inc.*, No. 5:20-CV-00185, 2020 WL 4050459 (E.D. Pa. July 20, 2020) (granting full summary judgment based on Pennsylvania's statute of limitations); *Norby v. Ethicon, Inc.*, No. 1:20-cv-00323-LMM, Doc. No. 45 (N.D. Ga. Apr. 17, 2020) (granting summary judgment in full due to filing outside of the two-year statute of limitations in Georgia).

/ / /

MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Houston ♦ Los Angeles ♦ San Francisco ♦ St. Louis

**B.     Plaintiff's warnings and fraud-based claims fail for lack of specific causation.[5]**

California courts apply the learned intermediary doctrine to warning claims arising from the use of prescription medical devices. *Dilley v. C.R. Bard, Inc.*, No. 2:14-CV-01795-ODW, 2014 WL 1338877, at *4 (C.D. Cal. Apr. 3, 2014) (citing *Carlin v. Superior Court*, 13 Cal. 4th 1104, 1116 (1996); *Plenger v. Alza Corp.*, 11 Cal. App. 4th 349, 362 (1992)).  The doctrine applies to product liability claims challenging the adequacy of a product's warnings, regardless of the theory attached, be it strict liability, negligence, breach of express or implied warranty, or fraud.  *See, e.g.*, *Motus v. Pfizer, Inc.*, 196 F. Supp. 2d 984, 989 (C.D. Cal. 2001), *aff'd*, 358 F.3d 659, 660-61 (9th Cir. 2004) (granting defendant's motion for summary judgment on claims for wrongful death, fraud, and breach of warranty, which were premised on the failure to warn claim); *Huntman v. Danek Med. Inc.*, No. 97-cv-2155, 1998 WL 663362, at *1, 5-6 (S.D. Cal. July 24, 1998) (concluding that learned intermediary doctrine applied to strict liability, negligence, fraud, breach of warranty); *Lord v. Sigueiros*, No. CV040243, 2006 WL 1510408, at *1 (Cal. Super. Ct. Apr. 25, 2006) (explaining that negligence, strict liability, breach of implied warranty, breach of express warranty, intentional infliction of emotional distress, and fraud claims all alleged a failure to warn); *Rivas v. Safety-Kleen Corp.*, 119 Cal. Rptr. 2d 503 (Cal. App. 2002) (finding that plaintiff's fraud claim "was merely the failure to warn claim recast as a claim for fraudulent concealment.").  The

---

[5] Plaintiff's other warnings and fraud claims (Counts VI, VII, VIII, and IX) are duplicative of Plaintiff's failure to warn claims (Counts I and III) and fail for lack of causation.  Additionally, the constructive fraud claim fails because Plaintiff cannot establish she was in a fiduciary or confidential relationship with Ethicon.  *See* Cal. Civ. Code § 1573 requires a showing of: (1) a fiduciary relationship; (2) nondisclosure; (3) intent to deceive; and (4) reliance and resulting injury (causation).  *Azadpour v. Sun Microsystems, Inc.*, No. C06-03272 MJJ, 2007 WL 2141079, at *3 (N.D. Cal. July 23, 2007); *see also Gen. Am. Life Ins. Co. v. Rana*, 769 F. Supp. 1121, 1126 (N.D. Cal. 1991).

Plaintiff stated in her Response and Memorandum in Opposition to Defendants' Motion for Summary Judgment, Doc. 24, at 5, n.2, that she does not oppose Defendants' Motion as to Counts XI (Breach of Express Warranty), Count XII (Breach of Implied Warranty), and Count XIII (Violation of Consumer Protection Laws).

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Houston ♦ Los Angeles ♦ San Francisco ♦ St. Louis

gravamen of Plaintiff's failure to warn and fraud-based claims is that Ethicon failed to warn about TVT-Exact's risks.

Under the learned intermediary doctrine, Plaintiff must prove "not only that no warning was provided or that the warning was inadequate, but also that the inadequacy or absence of the warning caused the [plaintiff's] injury." *Motus v. Pfizer Inc.*, 196 F. Supp. 2d 984, 991 (C.D. Cal. 2001), *aff'd sub nom. Motus v. Pfizer Inc. (Roerig Div.)*, 358 F.3d 659 (9th Cir. 2004); *see also Latiolais v. Merck & Co., Inc.*, 302 F. App'x 756, 757 (9th Cir. 2008). "[I]nadequacy of the warning and causation are *separate* elements of [the plaintiff's] affirmative burden. Where the physician did not read warnings, adequacy is irrelevant." *Tucker v. Wright Med. Tech., Inc.*, No. 11-CV-03086-YGR, 2013 WL 1149717, at *16 (N.D. Cal. Mar. 19, 2013) (emphasis in original) (granting the defendant's motion for summary judgment on failure to warn because plaintiff could not show a stronger warning would have change plaintiff's physician's mind as he failed to read the warning which was given). "A product defect claim based on insufficient warnings cannot survive summary judgment if stronger warnings would not have altered the conduct of the prescribing physician." *Motus*, 358 F.3d at 661.

"[T]he failure to provide warnings about risks already known to a sophisticated purchaser usually is not a proximate cause of harm resulting from those risks . . . . [T]his is because the user's knowledge of the dangers is the equivalent of prior notice." *Johnson v. Am. Standard, Inc.*, 179 P.3d 905, 911 (Cal. 2008) (citation omitted); *see also Plenger v. Alza Corp.*, 11 Cal. App. 4th 349, 352, 362 (1992).[6]

---

[6] Other courts have similarly recognized deficient warnings claims fail when the prescribing physicians independently knew of the risks and still prescribed the product. *See, e.g.*, *First Nat'l Bank & Trust Corp. v. Am. Eurocopter Corp.*, 378 F.3d 682, 691 (7th Cir. 2004) (concluding, under Indiana law, that "any lack of direct warning" to pilots "is inconsequential" because pilots knew of dangerous condition, and affirming summary judgment for manufacturer on warnings claim); *Gilliland v. Novartis Pharm. Corp.*, 34 F. Supp. 3d 960, 969–70 (S.D. Iowa 2014) (recognizing known-risk argument but denying summary judgment because of fact issue as to whether prescribing oncologists were aware of a risk); *Begley v. Bristol-Myers Squibb Co.*, No. 06-6051, 2013 WL 144177, at *4 (D.N.J. Jan. 11, 2013) ("As a corollary to the learned intermediary doctrine, drug manufacturers are not obligated to warn prescribing physicians of risks already known to the medical community . . . because 'there is no duty to warn of a risk that is already known by those to be warned[.]'") (internal citations omitted) (applying Illinois law);

MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Houston ♦ Los Angeles ♦ San Francisco ♦ St. Louis

Now that Dr. Chew has been deposed, Plaintiff remains unable to meet her burden to establish causation for each of the following reasons:

**1.     Dr. Chew did not rely on Defendants to warn her of the risks of implanting TVT-Exact.**

Dr. Chew testified she did not rely on Ethicon or its instructions for use ("IFU") to inform her of the risks of implanting TVT-Exact.  About the IFU, Dr. Chew testified, "I have seen it, but I don't rely on that as a way to train myself," and further:  "I don't rely on the manufacturer to educate me," and "I don't rely on Ethicon to update me on the current risks of mesh."  Ex. D, Chew Dep., at 106:1-2,18-19; 108:4-6.  Instead, Dr. Chew testified that she relies on many other sources to inform her about the risks of implanting TVT-Exact, including:  her residency and fellowship, continuing medical education, and medical literature examining the safety and efficacy of mesh slings.  Ex. D, Chew Dep., at 28:7-22; 151:13-24; 167:6-9.

Dr. Chew's testimony that she did not rely on TVT-Exact's IFU, even though she may have read or seen it at some point in her residency or training, is strikingly similar to the testimony of the implanting physician in *Sharp v. Ethicon, Inc.*, No. 2:20-CV-2028, 2020 WL 1434566 (W.D. Ark. Mar. 24, 2020). There the district court, applying Arkansas's learned intermediary doctrine, in that case, remanded from the same MDL as Ms. Renteria's, dismissed the parallel failure to warn claim.  *Id.* at *4.  The implanting physician in *Sharp* even testified that he had read TVT-O's IFU [TVT-O is also an Ethicon mesh sling, in the same family of medical devices as TVT-Exact, made from the same polypropylene material.] more than once, but that he did not rely on the IFU in his prescription decision for the plaintiff.  *Id.*

Here, as in *Sharp*, Plaintiff cannot demonstrate causation on her failure to warn claim because Dr. Chew was clear she did not rely on the TVT-Exact's warnings.

*Gray v. Badger Min. Corp.*, 676 N.W.2d 268, 275–76 (Minn. 2004) ("By applying traditional common law causation principles, we concluded that the failure of a drug manufacturer to warn a physician of the dangers of a drug was not the proximate cause of the injury to the patient where the physician acknowledged that he was fully aware of its potentially dangerous side effects.").

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Houston ♦ Los Angeles ♦ San Francisco ♦ St. Louis

TUCKER ELLIS LLP

Chicago ◆ Cleveland ◆ Columbus ◆ Houston ◆ Los Angeles ◆ San Francisco ◆ St. Louis

**2.      Prior to implanting Plaintiff's TVT-Exact, Dr. Chew was aware of each of the risks of injury Plaintiff's case-specific expert attributes to TVT-Exact.**

Plaintiff's case-specific expert Dr. Webster opines, "that the cause of her recurrent stress urinary incontinence and mesh exposure are related to the Ethicon Gynecare TVT Exact implant."  Ex. G, Webster Report, at 4.  At his deposition, Dr. Webster clarified that he intended to state the opinion that the recurrent incontinence was urgency, not stress incontinence.  Ex. E, Webster Dep., at 73:1-12.  Thus, the alleged injuries Dr. Webster connected to TVT-Exact are exposure (and pain related to exposure) and urge incontinence.  *Id.* at 80:11-24; 81:9-14.  Dr. Chew specifically affirmed her knowledge of these and other risks prior to her prescription decision and implantation of Plaintiff's TVT-Exact.  Ex. D, Chew Dep., at 39:20-41:24.

Accordingly, Dr. Chew was aware prior to Plaintiff's surgery that the TVT-Exact carried the risk of each of the injuries Plaintiff now claims, which her expert attributes very generally to the mesh.  Dr. Chew recommended the device with full prior knowledge of these risks. This undisputed testimony also precludes Plaintiff from demonstrating causation on her failure to warn claim.

**3.      Dr. Chew stands by her decision to implant Plaintiff's TVT-Exact.**

Dr. Chew testified that she heard nothing at her deposition about the risks of TVT-Exact that would change her decision to implant this sling to treat Plaintiff's stress urinary incontinence.  Ex. D, Chew Dep, at 173:7-17.  She further testified that TVT-Exact was "a reasonable and appropriate option for stress incontinence in 2014" and for Plaintiff, specifically.  *Id.* at 90:8-19.

Dr. Chew stands by her decision to recommend TVT-Exact to treat Plaintiff, and also agreed that, "If a woman came into [her] office today with the same medical history and symptoms as Ms. Renteria had in June 2014," she would "still recommend the TVT-Exact sling as a treatment for her stress incontinence."  Ex. D, Chew Dep., at 90:20-25.

Other district courts, presented with similar testimony from implanters in other

18

cases remanded from the same MDL as Plaintiff's, have found such unrefuted testimony warranted summary judgment. Indeed, similar implanter testimony was emphasized by the *Sharp* court in ruling in Ethicon's: "Even after [the implanting physician] was presented with [plaintiff's] criticism of the product warnings, he still testified that he would have taken the same course of action then as he would now, as his good opinion of the device had not changed." 2020 WL 1434566, at *4.

In *Abt v. Ethicon, Inc.*, the district court concluded that because the implanter, "testified he stands by his decision to select TVT-O for [the plaintiff], that he would not have changed his decision to implant the TVT-O in [plaintiff] even if the instructions for its use had included each of the additional risks [plaintiff] alleges were not included, and that he relied more on medical literature (rather than manufacturer's warnings) in deciding what implants to use," Defendants were entitled to summary judgment on the failure to warn claim due to the plaintiff's failure to establish causation. No. 1:20-cv-00047-SRC, 2020 WL 4887022, at *2 (Aug. 20, 2020 E.D. Mo.). The court in *Abt* further explained that this conclusion was in keeping with other courts which found that "plaintiffs cannot establish proximate causation where there is no evidence the implanting physician would have taken a different course of action even if provided an adequate warning." *Id.* at *3 (citing *Hull v. Ethicon, Inc.*, No. 3:20-cv-00038 JMS-DML, 2020 WL 1154577, at *9 (S.D. Ind. Mar. 10, 2020); *Cutter v. Ethicon, Inc.*, No. 5:19-443-DCR, 2020 WL 109809, at *9 (E.D. Ky. Jan. 9, 2020); *Contreras v. Boston Sci. Corp.*, No. 2:12-cv-03745, 2016 WL 14366682, at *4 (S.D. W. Va. Apr. 11, 2016)).

Dr. Chew's testimony parallels that of these other implanters cited in *Abt*. She stands by her decision, even though she knew the risks, and she did not rely on the manufacturer to inform her of these risks. For this reason also summary judgment should be granted on Plaintiff's warnings and fraud-based claims.

/ / /

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Houston ♦ Los Angeles ♦ San Francisco ♦ St. Louis

MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**C.**    **Plaintiff's negligent Design Defect claim (Count I) fails because Plaintiff's expert fails to connect Plaintiff's injuries to any defect in TVT-Exact, and Dr. Webster's testimony also does not provide a defect in the design of TVT-Exact which caused Plaintiff's alleged injuries.**

Dr. Webster has now been deposed, and his deposition testimony amply demonstrates his opinions are insufficient to establish that a defect in the design of TVT-Exact caused Plaintiff's alleged injuries.  In both his report and his subsequent testimony, Dr. Webster fails to identify a specific defect that allegedly caused Plaintiff's injuries.

To establish a negligent design claim, Plaintiffs must establish, through competent expert testimony, that a *defect* in *Prolift* caused Plaintiff's injuries.  "A product liability case must be based on substantial evidence establishing both the defect *and* causation (a substantial probability that the design defect, and not something else, caused the plaintiff's injury) and where . . . the complexity of the causation issue is beyond common experience, expert testimony is required to establish causation."  *Marmont v. Bernzomatic Corp.*, No. LACV1600848JAKRAOX, 2018 WL 6252500, at *14 (C.D. Cal. July 31, 2018) (quoting *Stephen v. Ford Motor Co.*, 134 Cal. App. 4th 1363, 1373 (2005)) (emphasis added).  *See* Judicial Council of Cal. Civ. Jury Instr. ("CACI") § 1204 (requiring proof "[t]hat the [product]'s *design* was a substantial factor in causing harm") (emphasis added); *Pooshs v. Philip Morris USA, Inc.*, 904 F. Supp. 2d 1009, 1025 (N.D. Cal. 2012) (under California law, "a plaintiff must prove that there was a design defect, which actually caused the injury").  The district court in *Cox v. Depuy Motech, Inc.* granted the defendant's summary judgment motion and described the ways in which the expert's report was insufficient in establishing the design defect claim, including that the expert, "did not identify any particular defect in the device" and that he "did not causally relate any alleged defect to plaintiff's postoperative complaints."  No. 95-CV-3848-L(JA), 2000 WL 1160486, at *7 (S.D. Cal. Mar. 29, 2000).

Dr. Webster is Plaintiff's only case-specific expert.  SUMF No. 17 (citing Ex. F, Pl.'s Expert Designation).  In his 3.5-page Report, Dr. Webster does not identify any

20

Tucker Ellis LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Houston ♦ Los Angeles ♦ San Francisco ♦ St. Louis

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Houston ♦ Los Angeles ♦ San Francisco ♦ St. Louis

specific defect in TVT-Exact's design, nor does he opine that any specific defect caused Plaintiff's injuries.  SUMF No. 21 (citing Ex. G, Webster Report).  Instead, Dr. Webster opines on that, "the cause of her recurrent stress urinary incontinence and mesh exposure are related to the Ethicon Gynecare TVT Exact implant."  SUMF No. 22 (citing Ex. G, Webster Report, at 4).  At his deposition, Dr. Webster clarified that there was a typographical error in his report, and he intended to state the opinion that the recurrent incontinence was urgency, not stress incontinence.  *Id.* (citing Ex. E, Webster Dep., at 73:1-12; 80:11-24; 81:9-14).  Thus, the alleged injuries that Dr. Webster connected to the TVT-Exact are exposure (and pain related to this exposure) and urge incontinence.

Other district courts have ruled in Defendants' favor on this same issue.  For instance, in *Lampron v. Ethicon, Inc*., the plaintiff's experts opined that the mesh had defects and that the plaintiff had complications because of the mesh, but the district court granted summary judgment in Ethicon's favor because plaintiff's expert failed to identify a design defect in the mesh that caused those complications.  *Lampron v. Johnson & Johnson & Ethicon, Inc*., No. 20-CV-317-JD, 2020 WL 3452150, at *4 (D.N.H. June 24, 2020) Similarly, while in the context of a motion to exclude, the district court in *Balura v. Ethicon, Inc*., 2020 WL 819293, at *9 (N.D.N.Y. Feb. 19, 2020), held that the opinions of plaintiff's expert could not support a design defect claim because "[w]hile [the expert] concludes that [plaintiff's] pelvic injuries were caused by the defective TVT device,'" the expert "fails to describe or explain how a defect in the TVT caused [her] injuries, as opposed to the mere presence of the TVT itself."  *See also Lancaster v. Ethicon, Inc*., 2020 WL 819291, at *6 (N.D.N.Y. Feb. 19, 2020) (same ruling  regarding a different plaintiff's expert: "Dr. Marvel states that 'Ms. Lancaster's pelvic complaints . . . were caused by the marked scarring [ ] and erosion caused by defects in [Defendants'] mesh product," "but Dr. Marvel does not state what defect caused Mrs. Lancaster's [injuries], or how the defect caused Mrs. Lancaster's injuries. . . . [the] report fails to 'tie' 'the design defect of the product' to 'the injury,' as is necessary to establish a design defect under New York law.").

MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

In *Abt*, the court, evaluating a statement about causation, which merely opined that the mesh, but no specific defect, was the cause of the plaintiff's injuries, stated, "Nowhere in Dr. Brennan's report does he connect a design defect with [the plaintiff's] injuries. He conclusorily states that generally the defective device caused [the plaintiff's] injuries. He provided no specifics such as what design defect caused what injuries, or how any design defect caused [the plaintiff's] injuries. He essentially concludes that the mere presence of the TVT-O caused [the plaintiff's] injuries." No. 1:20-cv-00047-SRC, 2020 WL 4887022, at *3. The court in *Abt* granted Defendants' motion for summary judgment on this claim, as well as on the failure to warn claim, discussed above. The description of Dr. Brennan's report applies equally to Dr. Webster's report—Dr. Webster also makes a conclusory statement about the cause of Plaintiff's injuries, providing no specifics about the defect which caused these injuries. Ex. C, Webster Report. Indeed, Dr. Webster's report is even more vague in his ultimate conclusion. Dr. Webster opines that the cause of Plaintiff's recurrent incontinence and mesh exposure are "related to" TVT-Exact. *Id.* The cause of Plaintiff's injuries could conceivably be "related to" TVT-Exact due to surgical error in its implantation, regardless of whether TVT-Exact had any design defect at all, much less one actually identified by Dr. Webster.

Plaintiff obtained no additional testimony at Dr. Webster's deposition which establishes that he has any further opinions about the specific defect which caused Plaintiff's injuries here. *See* Ex. B, Webster Dep. Dr. Webster testified that he was *not* opining that TVT-Exact is defective. *Id.*, at 80:11-14.

Thus, Defendants remain entitled to summary judgment on Plaintiff's negligent design defect claim for the reasons articulated in Defendants' Motion, Doc. 19 & 20.[7]

---

[7] Plaintiff stated in response to Defendants' initial Motion for Summary Judgment (Doc. 24, at pp. 9-10), she does not oppose Defendants' Motion as to her strict liability design defect claim (Count V). Additionally, California does not recognize a cause of action for strict liability design defect in cases involving drugs and medical devices. *Brown v. Superior Court*, 751 P.2d 470, 477-80 (Cal. 1988); *see also Garrett v. Howmedica Osteonics Corp.*, 214 Cal. App. 4th 173, 183-85 (2013) (dismissing a strict liability design defect claim in a case involving prosthetic bone); *Artiglio v. Superior Court*, 22 Cal. App. 4th 1388, 1397 (1994) (dismissing a strict liability design defect claim in a case involving a breast implant); *Sanchez v. Boston Scientific Corp.*, 38 F. Supp. 3d 727, 736

MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Houston ♦ Los Angeles ♦ San Francisco ♦ St. Louis

**D.**     **Plaintiff has no evidence to support a strict liability Manufacturing Defect claim (Counts I[8] and II).**

To sustain a strict liability manufacturing defect claim under California law, Plaintiff must offer evidence that the product differed "from the manufacturer's intended result or from other ostensibly identical units of the same product line." *Barker v. Lull Eng'g Corp.*, 20 Cal. 3d 413, 429 (Cal. 1978); *In re Coordinated Latex Glove Litig.*, 99 Cal. App. 4th 594, 613 (Cal. Ct. App. 2002) (noting that the "focus is on whether the particular product involved in the incident was manufactured in conformity with the manufacturer's design."). In doing so, the plaintiff must introduce expert evidence that a manufacturing defect existed and caused injury. *See Aguirre v. Home Depot U.S.A., Inc.*, No. 1:10-cv-00311-LJO-GSA, 2012 WL 3639078, at *5 (E.D. Cal. Aug. 23, 2012). Plaintiff has not presented evidence of a manufacturing defect. There is no evidence that the product implanted in Ms. Renteria deviated from Ethicon's design or that any such deviation caused Plaintiff's injury. Therefore, Plaintiff's manufacturing defect claim (Count II) should be dismissed.

**E.**     **Plaintiff also cannot establish her other negligence-based claims (Counts X and XIV).**

Plaintiff's negligent infliction of emotional distress claim (Count X) is not an independent cause of action. Rather, "it is well-settled that negligent emotional distress infliction is not an independent tort; rather it is the tort of negligence to which the duty element applies." *Friedman v. Merck & Co.*, 131 Cal. Rptr. 2d 885, 890 (Cal. App. 2003); *see also Lawson v. Management Activities, Inc.*, 81 Cal. Rptr. 2d 745, 748 (Cal. App. 1999) ("When courts use the acronym 'NIED' for 'negligent infliction of emotional

---

(S.D.W. Va. 2014) (applying California law and dismissing strict liability design defect claim).

[8] Plaintiff's negligence-based manufacturing defect claim – like her negligence-based warnings claim, is premised on the same series of facts as its strict liability counterpart and also fails for lack of causation. *Valentine v. Baxter Healthcare Corp.*, 81 Cal. Rptr. 2d 252 (Cal. App. 1999) ("the directed verdict on negligent failure to warn was correct because the strict liability verdict in *Valentine I* foreclosed a finding of negligent failure to warn.").

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Houston ♦ Los Angeles ♦ San Francisco ♦ St. Louis

distress' (and they commonly do) they are in danger of falling into a semantic trap . . . however handy the acronym . . . there is no such thing as the independent tort of negligent infliction of emotional distress").  Summary judgment is proper on this claim.

As for the gross negligence claim, Plaintiff cannot establish the higher burden of proof for that claim, which requires proof of extreme and outrageous conduct.  *See, e.g.*, *Grebing v. 24 Hour Fitness USA, Inc.*, 234 Cal. App. 4th 631, 637 (2015) ("Ordinary negligence consists of a failure to exercise reasonable care to protect others from harm, while gross negligence consists of a want of even scant care or an extreme departure from the ordinary standard of conduct.") (internal quotation marks omitted); *Calvillo–Silva v. Home Grocery*, 19 Cal. 4th 714, 729 (1998) ("[G]ross negligence . . . connotes such a lack of care as may be presumed to indicate a passive and indifferent attitude toward results . . . ."), *disapproved on other grounds in Aguilar v. Atlantic Richfield Co.*, 25 Cal. 4th 826, 853 n.19 (2001).

## F.   Plaintiff cannot establish an unjust enrichment claim (Count XV).

"[I]n California, there is not a standalone cause of action for 'unjust enrichment,' which is synonymous with 'restitution.'"  *Astiana v. Hain Celestial Group, Inc.*, 783 F.3d 753, 762 (9th Cir. 2015).  When a plaintiff alleges unjust enrichment, a court may "construe the cause of action as a quasi-contract claim seeking restitution." *Rutherford Holdings, LLC v. Plaza Del Rey*, 223 Cal. App. 4th 221, 231 (2014).  However, generally speaking "an action based on . . . quasi-contract cannot lie where there exists between the parties a valid express contract covering the same subject matter." *Id.* (internal quotation marks and citations omitted). Therefore, her quasi-contract claim for unjust enrichment (Count XV) should be dismissed as a matter of law.

## G.   There is no such claim of "strict liability – defective product" (Count IV) under California law.

On her Short-Form Complaint, Plaintiff has asserted a claim for "strict liability - defective product."  A search of California law does not reveal there to be any such cause of action.  Rather, after *Brown*, the manufacturer of medical devices is subject to strict

MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Tucker Ellis LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Houston ♦ Los Angeles ♦ San Francisco ♦ St. Louis

liability for manufacturing defects and failure to warn claims.  *See Garrett*, 214 Cal. App. 4th at 182; *In re Coordinated Latex Glove Litig.*, 99 Cal. App. 4th at 613.  Accordingly, the claim for "strict liability - defective product" (Count IV) should be dismissed.

## IV.   <u>CONCLUSION</u>

For the reasons stated above, Defendants respectfully requests that the Court dismiss with prejudice all of Plaintiff's remaining claims as a matter of law.

DATED:  September 14, 2020          Tucker Ellis LLP


                                    By:   */s/ Mollie F. Benedict*
                                          Mollie F. Benedict
                                          Joshua J. Wes
                                          Nicholas V. Janizeh

TUCKER ELLIS LLP
Chicago ♦ Cleveland ♦ Columbus ♦ Houston ♦ Los Angeles ♦ San Francisco ♦ St. Louis